UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

Case No. 23-CR-20470
HON. MARK A. GOLDSMITH

DEVIN KING, et al.,

Defendants.
______________________________________/

**OPINION AND ORDER (1) DENYING DEFENDANT JORDAN GILMORE'S MOTION TO SEVER (Dkt. 178), (2) DENYING DEFENDANT DEVON HILL'S MOTION TO SEVER COUNT SEVEN (Dkt. 243), (3) DENYING DEFENDANT DEVIN KING'S MOTIONS TO SUPPRESS (Dkts. 188, 191, 261), AND (4) DENYING DEFENDANT TREVON MATHIS'S MOTION TO SUPPRESS (Dkt. 182)**

Before the Court are six motions involving multiple Defendants, all who have been charged with racketeering conspiracy and related crimes. The first motion, filed by Defendant Jordan Gilmore, is a motion to sever the wire fraud conspiracy charged in Count 7 from the racketeering and drug conspiracies charged in Counts 1 and 2 (Dkt. 178).[1] Defendants Malik Thomas and Devin King filed notices of joinder concurring in the relief sought in the motion (Dkts. 187, 209). Defendant Devon Hill also filed a motion to sever Count 7 (Dkt. 243).[2] Defendants Trevon Mathis and Malik Thomas filed notices of joinder concurring in the relief sought in the motion (Dkts. 252, 273).

---

[1] In addition to Gilmore's motion, the briefing includes the Government's response (Dkt. 180). A hearing was held on the motion on 2/19/26.

[2] In addition to Hill's motion, the briefing also includes the Government's response (Dkt. 253). A hearing was held on the motion on 1/29/26.

Defendant Devin King filed a motion to suppress evidence he alleges was illegally obtained pursuant to a complaint and arrest warrant that the Government dismissed (Dkt. 188).[3] Defendant Devon Hill filed a notice of joinder concurring in the relief sought in the motion (Dkt. 248). King filed a second motion to suppress evidence that he alleges was illegally obtained during a traffic stop (Dkt. 191).[4] Defendants Trevon Mathis and Jordan Gilmore filed notices of joinder concurring in the relief sought in the motion (Dkts. 201, 276).

Defendant Trevon Mathis filed a motion to suppress evidence that Mathis argues was seized pursuant to an overbroad warrant (Dkt. 182).[5] Defendants Devin King, Devon Hill, and Jordan Gilmore filed notices of joinder concurring in the relief sought in the motion (Dkts. 208, 246, 277). King filed a third motion to suppress arguing that the Court should suppress evidence seized pursuant to an overbroad warrant (Dkt. 261).[6] For the reasons set forth below, the Court denies the motions.[7]

## I. BACKGROUND

[3] In addition to King's motion, the briefing also includes the Government's response (Dkt. 216) and Government's response to Hill's joinders (Dkt. 254). A hearing was held on the motion on 2/26/26.

[4] In addition to King's motion, the briefing also includes the Government's response (Dkt. 212). A hearing was held on the motion on 2/26/26.

[5] In addition to Mathis's motion, the briefing includes the Government's response (Dkt. 218), Mathis's supplemental brief (Dkt. 239), the Government's supplemental brief (Dkt. 241), and Government's response to Hill's joinders (Dkt. 254). In addition to King's motion found at Dkt. 188, the briefing includes the Government's response (Dkt. 216). A hearing was held on the motion on 2/26/26.

[6] In addition to King's motion, the briefing also includes the Government's response (Dkt. 267). A hearing was held on the motion on 2/26/26.

[7] The Court informed counsel of its intended rulings on May 4, 2026, in advance of the formal rulings embodied in this Opinion. After the informal notice of intended rulings, guilty pleas were entered by Jordan Gilmore, Malik Thomas, Devon Hill, and Vincent McKinney.

Count 1 of the indictment charges all six Defendants with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), related to the Purple Heart Vets (PHV), a street gang involved in shootings, drug trafficking, and fraud. Indictment ¶¶ 1–130 (Dkt. 1). Count 2 of the indictment charges all six Defendants with conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846. Id. ¶ 131.

Counts 3 and 5 charge King and Mathis with possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). Id. ¶¶ 132, 134. Counts 4 and 6 charge Mathis with felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Id. ¶¶ 133, 135.

Count 7 charges King, Mathis, Gilmore, Hill, and McKinney with conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1349, 1343. Id. ¶¶ 136–147. Counts 8, 9, and 10 charge Mathis, McKinney, and Gilmore with aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). Id. ¶¶ 148–153.

## II. ANALYSIS

### A. Gilmore and Hill's Motions to Sever (Dkts. 178, 243)

Gilmore and Hill argue that the wire fraud conspiracy charged in Count 7 should be severed and proceed separately. Gilmore Mot. at PageID.686; Hill Mot. at PageID.1361. The Court disagrees with both Gilmore and Hill and denies their motions to sever.

#### 1. Rule 8

"Federal Rule of Criminal Procedure 8 governs the conditions under which multiple offenses and defendants may be joined in a single indictment." United States v. Abegunde, 841 F. App'x 867, 872 (6th Cir. 2021). Rule 8(a) allows the Government to join multiple offenses "if the offenses charged are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." United States

v. Hatton, 643 F. App'x 574, 579 (6th Cir. 2016) (punctuation modified). "Rule 8(a) is construed in favor of joinder, but failure to meet the requirements of the rule may constitute misjoinder as a matter of law." Id. (punctuation modified). The spirit of Rule 8(a) is to "promote the goals of trial convenience and judicial economy." United States v. Graham, 275 F.3d 490, 512 (6th Cir. 2001) (punctuation modified).

Similarly, Rule 8(b) allows joinder of multiple defendants in a single indictment if those defendants are "alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). Like Rule 8(a), Rule 8(b) is "designed to promote economy, efficiency, and convenience, as well as avoid a 'multiplicity of trials' and the 'scandal and inequity of inconsistent verdicts.'" United States v. Bell, No. 17-cr-20183, 2019 WL 3451223, at *3 (E.D. Mich. July 31, 2019) (quoting Zafiro v. United States, 506 U.S. 534, 537, 540 (1993)). As a general rule, persons jointly indicted should be jointly tried. United States v. Moreno, 933 F.2d 362, 369 (6th Cir. 1991). The Sixth Circuit has not conclusively stated whether Rule 8(a) or 8(b) governs a defendant's claim that multiple offenses were improperly joined in a multi-defendant case so the Court will evaluate Defendants' arguments under both rules. United States v. Abegunde, 841 F. App'x 867, 872 (6th Cir. 2021).

Both Gilmore and Hill argue that the conspiracies are not similar enough to be joined. Gilmore Mot. at PageID.685–686; Hill Mot. at PageID.1365–1366. Gilmore argues that just because the conspiracies involve some of the same individuals does not mean that the conspiracies should be joined. Gilmore Mot. at PageID.686. Hill argues that Count 7 is mis-joined because it does not involve "similar actions or a similar course of conduct" because "manipulation of state benefits systems . . . bears no resemblance to street-level gang violence." Hill Mot. at PageID.1366. Without citing to any authority, Hill argues that the allegation that one conspiracy

may have funded the other is insufficient to create a "single scheme" for joinder. Id.

The Court disagrees and finds that Gilmore and Hill's motions fail under both Rule 8(a) and (b). Under Rule 8(a) "when the joined counts are logically related, and there is a large area of overlapping proof, joinder is appropriate." United States v. Wirsing, 719 F.2d 859, 863 (6th Cir. 1983) (punctuation modified). As the Government points out, the conspiracies are logically related because the Government has alleged that the drug and wire fraud conspiracies were overt acts in the RICO conspiracy. Indictment at PageID.4–5; Resp. at PageID.694 (Dkt. 180); Resp. at PageID.1390 (Dkt. 253). Further, the Government has alleged overlapping proofs as the indictment alleges that the Defendants used phones and social media to coordinate drug trafficking and fraud. Indictment at PageID.7. The same reasoning applies under Rule 8(b)—the indictment alleges that both the drug trafficking and wire fraud conspiracies are part of the common scheme or plan of the RICO conspiracy. Id. at PageID.4–5; Resp. at PageID.694 (Dkt. 180); Resp. at PageID.1390 (Dkt. 253). Joinder is proper under these circumstances. See e.g., United States v. Hosseini, 679 F.3d 544, 553 (7th Cir. 2012) ("The allegations underlying the drug-trafficking conspiracy were part and parcel of the course of conduct alleged in the RICO and money-laundering counts.").

**2. Rule 14**

Severance under Rule 14 is "stringent and falls within the district court's sound discretion; severance is only required if there is a 'serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" United States v. Bell, No. 17-20183, 2019 WL 3451223, at *4 (E.D. Mich. July 31, 2019) (quoting Zafiro v. United States, 506 U.S. 534, 539 (1993)). Further, even if the risk of prejudice is high, the Supreme Court and the Sixth Circuit have held that "less drastic measures,

such as limiting instructions, often will suffice to cure any risk of prejudice." United States v. Driver, 535 F.3d 424, 427 (6th Cir. 2008) (quoting Zafiro, 506 U.S. at 539). Thus, a motion for severance should be denied "if a jury can properly compartmentalize the evidence as it relates to the appropriate defendants." United States v. Causey, 834 F.2d 1277, 1287 (6th Cir. 1987).

Gilmore and Hill both argue that they will be severely prejudiced if the Government is allowed to present evidence of all three conspiracies at the same trial. Gilmore Mot. at PageID.686; Hill Mot. at PageID.1367–1369. Gilmore explains that an alleged murder in a RICO case "would have no evidentiary basis" in a wire fraud case and be "massively prejudicial." Citing United States v. Davidson, 936 F.2d 856 (6th Cir. 1991), Hill asserts that "no juror" would be able to listen to testimony about murder and "then suddenly pivot" to hear testimony about fraud. Hill Mot. at PageID.1367–1368.

These arguments are not persuasive. The jury can reasonably be expected to compartmentalize the evidence relevant to the different counts, pursuant to instructions from the Court. The charges at issue are not so complex as to make compartmentalization difficult, and the Court can guide the jury through instructions given before, during, and after proofs, as necessary. Further neither Gilmore nor Hill explain why a limiting instruction would not suffice to cure any potential prejudice.

The Davidson case cited by Hill does not warrant a different finding. In Davidson, the Government charged four defendants with ten counts of narcotics and tax violations. Davidson, 936 F.2d at 857. Prior to trial, the defendants brought a motion to sever the tax counts from the narcotics counts. Id. at PageID.860. The district court denied the motion. Id. Only two defendants, Davidson and Mulligan, proceeded to trial. Id. at 857. Davidson was charged only with one count of conspiracy to possess with intent to distribute cocaine and heroin in violation of

18 U.S.C. §§ 841(a)(1) and 846. Id. Mulligan was charged with 10 counts of narcotics and tax violations. Id. Mulligan did not appear for trial and he was tried in absentia. Id. Davidson and Mulligan were both convicted. Id.

On appeal, one of Davidson's arguments was that there was an insufficient nexus between the tax charges and the narcotics charges to justify a joinder. Id. at 860–861. The Sixth Circuit agreed reasoning that Davidson's one narcotics count was unrelated to Mulligan's tax counts. Id. at 861. Further, the court found that Davidson "suffered substantial prejudice from the spillover effect of the proof of the unrelated tax charges against his absent co-defendant [Mulligan]." Id. at 861.

Davidson is distinguishable from the case at hand in at least two ways. For one thing, the tax charges and drug charge against Davidson were completely unrelated, whereas here, all charges are related to the RICO conspiracy. For another, the defendant in Davidson was tried alongside an absent co-defendant, which added an additional prejudicial element to the trial. That is not present here. Because of these differences, Davidson does not compel the Court to sever the charges.

For these reasons the motions to sever (Dkts. 178, 243) are denied.

**B. King's Motion to Suppress (Dkt. 188)**

King challenges his arrest pursuant to the later dismissed criminal complaint and seizure of his phone incident to that arrest; he requests an evidentiary hearing and a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). See Mot. For the following reasons, the Court denies the motion.

King was arrested on a criminal complaint for illegally possessing two firearms as a convicted felon. See Crim. Compl. (Dkt. 188-1). To establish probable cause that King was a

felon for the criminal complaint, the affiant explained that she reviewed King's computerized criminal history (CCH), which showed that he had a 2020 conviction for "attempt—felony weapons—carrying concealed" in the 37th District Court in Macomb County, Michigan. Id. at PageID.836. During the arrest, law enforcement seized a phone from King's pocket. Phone Warrant Affidavit at PageID.1075 (Dkt. 220 *SEALED*). At King's initial appearance the same day, the Government learned that the conviction it relied upon to show that King was a felon was not actually a felony charge. Id. at PageID.1075–1076. The next day, the Government dismissed the complaint without prejudice. Mot. to Dismiss at PageID.841 (Dkt. 188-2). The Government states, and King does not refute, that after he was released, he did not request his phone be returned. Resp. at PageID.1019 (Dkt. 216).

The Government then obtained a warrant to search the seized phone. Warrant at PageID.1124 (Dkt. 220 *SEALED*). In the warrant affidavit, the affiant explained the mistake regarding King's criminal history and how the Government had dismissed the complaint against him. Id. at PageID.1075–1077. The affiant also stated that based on her training and experience, that it is "common" to rely on the CCH to determine an individual's criminal history and that she has done so "approximately a dozen times." Id. at PageID.1075–1076, fn. 1. The affiant further explained that at the time of King's arrest, she reasonably believed that King was a convicted felon based on her review of his CCH and King's recorded jail calls in which he stated that he was charged with "felony firearm" because he was "caught with a firearm with a felony already." Id. at PageID.1076–1077. Despite this mistake regarding her interpretation of his criminal history, the affiant explained why she had probable cause that the phone contained evidence of King's

alleged criminal activity. Id. at PageID.1085–1104.[8]

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "When a probable-cause determination was based on reasonable but mistaken assumptions, the person subjected to a search or seizure has not necessarily been the victim of a constitutional violation." Herring v. United States, 555 U.S. 135, 139 (2009). "[T] the ultimate touchstone of the Fourth Amendment is reasonableness." Heien v. North Carolina, 574 U.S. 54, 60 (2014) (punctuation modified). "[T]he Fourth Amendment allows for some mistakes on the part of government officials. . . ." Id. (punctuation modified).

The affiant's mistake in this case was reasonable so there was no Fourth Amendment violation. The affiant relied on King's CCH which stated that King plead guilty to "attempt—felony weapons—carrying concealed" and his own statements in jail calls that he was a felon. King CCH at PageID.963 (Dkt. 204-1 *SEALED*); Phone Warrant Affidavit at PageID.1075–1077. It is reasonable to infer that an individual was convicted of a felony when the offense that the individual pled guilty to has "felony" in its title. It is also reasonable to rely on a CCH that states that an individual pled guilty to a charge with felony in its name and a defendant's own statements about his criminal history. There was no constitutional violation in securing the warrant.

The same is true for the seizure of King's phone incident to his arrest. King argues that because his arrest was unconstitutional, the subsequent seizure of his phone was also improper and

[8] This evidence includes videos of King with allegedly stolen firearms; King's arrest for carrying a concealed weapon after police observed him with a firearm during a fight at a funeral home; and evidence of King's involvement in two non-fatal shootings, among other evidence. Phone Warrant Affidavit at PageID.1085–1104.

the evidence obtained from it should be suppressed. Mot. at PageID.823. Not so. The same mistaken belief of principle applies to the seizure of King's phone incident to arrest. The seizure of his phone was not improper.

Regardless, even if the Court had found a constitutional violation, suppression "is not an automatic consequence of a Fourth Amendment violation." Herring, 555 U.S. at 137. The good-faith exception to the exclusionary rule does not bar evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." United States v. Leon, 468 U.S. 897, 905 (1984). King argues that the good-faith exception should not apply and if the Court disagrees, it should hold an evidentiary and a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). Mot. at PageID.823.

"[A] defendant must make at least some initial showing of contested facts to be entitled to [an evidentiary hearing]." United States v. Giacalone, 853 F.2d 470, 483 (6th Cir. 1988). King has not shown that any facts were contested. See Mot; Resp.; 2/26/26 Hr'g. Trans. at PageID.1519–1537 (Dkt. 280). He is not entitled to an evidentiary hearing.

King is also not entitled to a Franks hearing. A defendant is entitled to a Franks hearing if he satisfies a significant threshold requirement: "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause. . . ." Franks, 438 U.S. at 155–156. The allegations "must be more than conclusory" and "must be accompanied with an offer of proof." Id. at 171. King offers no evidence that the affiant knowingly and intentionally or recklessly disregarded the truth in stating that King had a felony conviction in the criminal complaint. King only states that the affiant "improperly read" his CCH and "made no effort to confirm" whether the conviction was a felony.

Mot. at PageID.823. This is not "substantial" evidence of a "knowing[] and intentional[]" false statement. Franks, 438 U.S. at 155–156. King provides no authority that states otherwise.

King explains that the good-faith exception does not apply because the affiant "made no effort to confirm a conviction or whether the conviction was a misdemeanor or felony." Mot. at PageID.823. He then suggests steps that the affiant could have taken to confirm King's conviction. Id. at PageID.823–824. He also asserts that the situation is different from that in Herring because the affiant's error was not due to a clerical error. Id. at PageID.823.

The good-faith exception is inapplicable where the issuing magistrate "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth." Leon, 468 U.S. at 923 (citing Franks). As the Court has already explained, King has not shown that the affiant showed a reckless disregard for the truth by stating that King's conviction was a felony. The fact that the error was attributable to the affiant versus a clerical error is of no import when the Court finds that the affiant's error was reasonable. As such, the Court finds that the good-faith exception applies.

King's motion is denied.

**C. Mathis and King's Motions to Suppress (Dkts. 182, 261)**

Mathis seeks to suppress evidence obtained from King's iPhone that was seized during King's September 23, 2021 arrest. See Mathis Mot. (Dkt. 182). Mathis argues that the warrant used to obtain the evidence lacked probable cause, was overbroad, and was not sufficiently particular. Id. at PageID.715–726. King's motion adopts and incorporates the arguments in Mathis's motion so the Court will only refer to Mathis's motion. King Mot. at PageID.1423 (Dkt. 261). The Government argues that Mathis does not have standing to challenge the warrant. Resp. at PageID.1039–1047 (Dkt. 218). And regardless, the warrant affidavit has sufficient probable

cause. Id. at PageID.1048–1062. For the following reasons, the Court agrees with the Government and denies the motions.

King was arrested on July 29, 2021 for carrying a concealed weapon. Resp. at PageID.1035. King's phone ending in -4327 was seized incident to his arrest. Id. King was released from custody on August 1, 2021 and his phone was not returned to him. Id.

On September 23, 2021, King was arrested again on a federal complaint for felon in possession as discussed in the motion found at Dkt. 188. Id. at PageID.1036. His phone was again seized incident to arrest. Id. As discussed above, the Government learned that King had not been convicted of a felony, and the complaint was dismissed the day after his arrest. Id. King's phone remained with the Government. Id. The Government obtained a search warrant for this phone. Search Warrant at PageID.731– (Dkt. 182-1 *SEALED*).

According to the Government, the forensic examination of King's phone revealed that a "factory reset" was performed on the device on August 1, 2021, the same day King was released from custody after his July 29, 2021 arrest. Resp. at PageID.1037. When the device was seized, on September 23, 2021, incident to King's arrest on the later-dismissed federal complaint, the phone was registered to King's -4327 number. Id. King's Apple ID, two email accounts, Twitter account, and Tik Tok account were registered to the device and the telephone number registered on the Telegram application was King's -4327 number. Id. The device also contained messages directed to King from his girlfriend and family members. Id. at PageID.1038. Further, during a recorded post-Miranda interview, King explained that the device was "given to [him] by someone" after he got out of jail on August 1, 2021. Id. at PageID.1039.

The forensic examination also revealed that before King's phone number was assigned to the device, Mathis's number ending in -6384 was assigned. Id. The Government knew Mathis's

number based on other warrants secured during the pendency of this investigation. Id. at PageID.1037–1038. However, after August 1, 2021, there was no evidence on the device that it was still being used by Mathis. Id. at PageID.1039. There were no messages on the device addressed to Mathis after August 1, 2021. Id. at PageID.1038. And there was a message from the device to Mathis's -6384 number on August 25, 2021. Id. This led the Government to believe that Mathis gave King the device after he was released from custody on August 1, 2021. Id. at PageID.1038.

**1. Standing**

The Government argues that Mathis does not have a reasonable expectation of privacy in the device so he does not have standing to challenge the search. Resp. at PageID.1039–1046. For the following reasons, the Court agrees.

A person contending that a search violated his or her Fourth Amendment rights must first demonstrate that he or she had a legitimate expectation of privacy in the premises searched that "society is prepared to recognize as reasonable." Carpenter v. United States, 585 U.S. 296, 304 (2018). Although there is no "single metric or exhaustive list of considerations" to use when determining whether a person has a subjective and objectively reasonable expectation of privacy, Byrd v. United States, 584 U.S. 395, 405 (2018), courts have often considered a variety of factors, including whether the person has (i) a "proprietary or possessory interest in the place to be searched or item to be seized"; (ii) "the right to exclude others from the place in question"; (iii) "taken normal precautions to maintain his privacy"; and (iv) "exhibited a subjective expectation that the area would remain free from governmental intrusion." United States v. Allen, 720 F. App'x 254, 257 (6th Cir. 2018) (quoting United States v. Waller, 426 F.3d 838, 844 (6th Cir. 2005)).

Mathis lacks standing because he abandoned the phone, and as such, he no longer has a

reasonable expectation of privacy. See, e.g., Abel v. United States, 362 U.S. 217, 241 (1960) (lawful seizure of abandoned property); United States v. Peters, 194 F.3d 692, 696 (6th Cir. 1999) (holding that by voluntarily abandoning the property, defendant forfeited any reasonable expectation of privacy).

Roughly two months before agents seized King's phone, Mathis gave the phone to King, extinguishing any expectation of privacy that he had in it. Indeed, Mathis admits that he performed the factory reset on August 1, "intending to erase his private information." 2/28/26 Hr'g. Trans. at PageID.1544 (Dkt. 280). King then connected his phone number, email, Twitter, TikTok, and Apple ID to the device, and used it until officers seized it from his back pocket. Resp. at PageID.1037–1039. After August 1, 2021, Mathis no longer had control over the phone or its contents; he had no possessory interest; he had no right to exclude others; he failed to take normal precautions to maintain his privacy; and he had no subjective expectation that the phone would remain free from governmental intrusion. See Shamaeizadeh v. Cunigan, 338 F.3d 535, 544 (6th Cir. 2003) (listing factors).

Mathis does not really respond to this argument. His motion states that he has standing "due to his privacy interest" in the device, but he does not cite any caselaw in support of his argument. Mot. at PageID.714. He also argues that the Government knew that he had been a subscriber of the device before they obtained the warrant. Id.[9] Mathis does not explain this

[9] The Government disputes this fact. The Government explains that the case agent obtained a grand jury subpoena for the IP address of King's Instagram account, not for the device, which only showed that King was using Mathis's internet service and may have uploaded photos near Mathis's home. Gov. Supp. Br. at PageID.1282–1284 (Dkt. 241); Search Warrant Affidavit at PageID.740; 749. Agents did not request records about the device's subscriber information until August 2022, which is nearly a year after agents obtained the warrant for the device. Gov. Supp. Br. at PageID.1283. Thus, the Government did not know that Mathis's information would be on the device before they actually searched it. Regardless, status as a subscriber, alone, is insufficient to give rise to a reasonable expectation of privacy. United States v. Scott, No. 14-20780, 2015 WL

argument further. In his supplemental brief, Mathis's only argument related to standing appears in a footnote. Mathis Supp. Br. at PageID.1234–1235, n. 2 (Dkt. 239). He argues that the "fact that he hit the re-set button demonstrates an intent to keep [his] personal records private" from King when King began using the device. Id. Mathis cites no on-point caselaw, only authority that states general Fourth Amendment privacy principles. Id.

For the foregoing reasons, the Court finds that Mathis does not have standing to challenge the search of King's device despite the fact that a forensic examination found his deleted data on the device.

**2. Probable Cause**

The Court evaluates Mathis's other arguments that the warrant is deficient as it relates to King who does have standing to challenge the warrant. "Probable cause requires only a probability or substantial chance of criminal activity[.]" United States v. Christian, 925 F.3d 305, 311 (6th Cir. 2019) (punctuation modified). It is "not a high bar to clear." Id. (punctuation modified). A reviewing court "must employ great deference" to the issuing judge's determination. United States v. Sanders, 106 F.4th 455, 461 (6th Cir. 2024) (punctuation modified).

The affidavit establishes probable cause that the phone will contain evidence of (i) violent crime in aid of racketeering; (ii) possession of a stolen firearm; (iii) two non-fatal shootings allegedly associated with King; (iv) King's social media communications with other alleged gang members; and (v) King's alleged membership in a gang. Search Warrant Affidavit at PageID.736–737, 739–740, 742. The affiant explained her vast experience investigating gangs and described King's alleged association with two gangs. Id. at PageID.735–736, 739–747, 763–764. She then described King's alleged connection to guns and shootings; his alleged possession of a stolen gun

4644963, at *4 (E.D. Mich. Aug. 5, 2015).

on Instagram; his alleged involvement in shootings on July 11 and 14, 2021; and social media posts that allegedly show King possessing a gun. Id. at PageID.740, 747–748, 751–759, 760–761. Based on her training and experience, the affiant described evidence often found on gang members' phones and her belief that such evidence would be on King's phone. Id. at PageID.739, 742, 769–770. The affiant's training and experience, along with the specific facts connecting King to gang activity, shootings, and guns, overwhelmingly established probable cause that the phone contained evidence of the target offenses. Thus, the warrant contains sufficient probable cause.

**3. Nexus**

The motion also argues that there is no nexus between the evidence sought and the device. Mot. at PageID.719–721. It argues that the required nexus must be more than "allegations of activit[ies]" that any of us would do such as texting, sharing videos, and joining social media. Id. at PageID.719. The motion cites caselaw in support of this argument but the caselaw cited has to do with nexus in the context of searches of places, not cell phones. Id. at PageID.719–720.

The Sixth Circuit has considered two potential nexus standards regarding cell phones. United States v. Tanzil, No. 25-1102, 2025 WL 3244494, at *3 (6th Cir. Nov. 20, 2025). "One standard would require an affidavit to make factual allegations that the cell phone to be searched itself is being used in connection with criminal activity." Id. (punctuation modified). The other "mirrors the traditional probable cause inquiry" and "require[es] an affidavit to allege a fair probability the phone will aid in a particular investigation and disclose evidence of criminal activity." Id. (punctuation modified).

The warrant contains sufficient nexus statements under both standards. The affidavit details two recorded conversations that King had on the device with an inmate where he talked about two non-fatal shootings and starting a feud over a social media argument. Search Warrant

Affidavit at PageID.739. This demonstrates that the device itself is being used in connection with alleged criminal activity. Further, based on the affiant's training and experience, she knows that individuals link their social media to their phones and also that alleged gang members communicate via social media because it is linked to their phones. Id. at PageID.739–740. These statements establish that there is a fair probability that the phone will aid in the investigation. Thus, the warrant establishes a sufficient nexus as to the particular device itself.

**4. Particularity**

The motion also asserts that the warrant should be suppressed because it is not sufficiently particular. Mot. at PageID.722–726. It argues that the warrant fails to "limit broad descriptive terms by relative dates, when such dates are available." Id. at PageID.724. It also asserts that the description of "black iPhone" is overbroad. Id. at PageID.726. Lastly, the motion argues that the warrant describes in both "specific" and "general" terms of what is to be seized so it "broadly authorizes the seizure of items as to which there is no probable cause." Id.

A warrant is sufficiently particular if "its text constrains the search to evidence of a specific crime." United States v. Castro, 881 F.3d 961, 965 (6th Cir. 2018). It is "valid when it is as specific as the circumstances and the nature of the activity under investigation permit." United States v. Honeysucker, No. 21-2614, 2023 WL 142265, at *4 (6th Cir. Jan. 10, 2023) (punctuation modified). For electronic devices, the Sixth Circuit has "taken a flexible approach [ ] based on the difficulties in sifting through electronic evidence." United States v. Nester, No. 23-1727, 2024 WL 4615777, at *7 (6th Cir. Oct. 30, 2024). It is impractical to impose "exacting specificity requirements" for electronic devices like cell phones. Id. at *5; United States v. Bass, 785 F.3d 1043, 1049 (6th Cir. 2015).

The warrant is sufficiently particular. It described what the agents could seize and limited

the scope to evidence of violations of the specified target offenses. Search Warrant Attachment B at PageID.784–785 (Dkt. 182-1) ("The government is authorized to seize all information that constitutes fruits, evidence, or instrumentalities of suspected violations of Title 18 U.S.C. § 1959 . . . § 922(j) . . ."). That was reasonable. At that stage, agents "could not have known where this information was located in the phone or in what format." Bass, 785 F.3d at 1050; Nester, 2024 WL 4615777, at *5–7. So the warrant was "restricted to a search for evidence of [specific] crimes and did not permit a free-ranging search." United States v. Richards, 659 F.3d 527, 542 (6th Cir. 2011).

Further, the Sixth Circuit does not require time limitations for search warrants of electronic devices. See, e.g., Castro, 881 F.3d at 965–966; Honeysucker, 2023 WL 142265, at *4–5; Nester, 2024 WL 4615777, at *6. When specific dates are not reasonably available, "[a] description contained in a warrant is sufficiently particular if it is as specific as the circumstances and the nature of the alleged crime permit." United States v. Logan, 250 F.3d 350, 365 (6th Cir. 2001) (overruled on other grounds). Here, Attachment B limited the search to the target offenses. Search Warrant Attachment B at PageID.784. This acted as a global modifier. When a "warrant contain[s] a global modifier that limit[s] its scope to items [ ] related to a list of offenses for which there was probable cause[,]" it is not overbroad. United States v. Willoughby, 742 F.3d 229, 233 (6th Cir. 2014) (overruled on other grounds); see also United States v. Richards, 659 F.3d 527, 537 (6th Cir. 2011). The warrant was sufficiently specific for the crimes involved and the evidence sought. United States v. Abboud, 438 F.3d 554, 575 (6th Cir. 2006). Because the agent did not have dates for King's gang association or when he acquired the stolen firearm, given the totality of the evidence, "the broad scope of the warrant was reasonable under the circumstances." Bass, 785 F.3d at 1050; Richards, 659 F.3d at 541. Because the warrant restricted the search to specific

crimes, it is sufficiently particular on this basis.

There is also no ambiguity about which phone the warrant related. Warrants "need enough detail for the executing officer to ascertain and identify the place intended with reasonable effort." United States v. Kirtdoll, 101 F.4th 454, 456 (6th Cir. 2024) (punctuation modified). Here, Attachment A authorizes the search of the device, which is mentioned in the warrant as "one black Apple iPhone," that is located at the ATF Field Division, and was seized on September 23, 2021 "incident to King's arrest on a federal arrest warrant[.]" Search Warrant at PageID.733, 737, 783. Officers seized only one phone during King's arrest, so it is clear which phone the warrant identified. See United States v. Evans Landscaping Inc., 850 F. App'x 942, 948 (6th Cir. 2021) (stating that "law enforcement officers may incorporate by reference a search warrant application in many circumstances[,]" including the attachments); see also United States v. Abdalla, 327 F. Supp. 3d 1079, 1089 (M.D. Tenn. 2018) (finding no "overly exacting standard for determining when a warrant successfully incorporates a supporting affidavit," nor "required magic words of incorporation").

The warrant is sufficiently particular.

**5. Good Faith Exception**

If the Court is incorrect on the issues of standing, probable cause, and particularity, the ultimate result of the motion would not change because the good faith exception applies.

The exclusionary rule does not apply where officers acted in good faith and reasonably relied on search warrant later found invalid. United States v. Leon, 468 U.S. 897 (1984). The good-faith exception applies unless: (i) the affidavit contained a knowing or reckless falsity; (ii) the issuing judge wholly abandoned his judicial role; (iii) the affidavit is so lacking in probable cause as to render official belief in its existence entirely unreasonable; or (iv) the officer's reliance

on the warrant was neither in good faith nor objectively reasonable. Abboud, 438 F.3d at 578. None of those situations applies here. The lengthy affidavit established that King was connected to two gangs and two shootings, and that he possessed a stolen firearm used in multiple shootings. Drawing on years of gang investigations, the affiant highlighted how central phones are to gang membership, activity, and the collection of evidence. Even if the warrant lacked probable cause, the good faith exception bars exclusion.

**D. King's Second Motion to Suppress (Dkt. 191)**

King's next motion seeks to suppress the evidence obtained from searching his car after he was arrested. Mot. at PageID.859 (Dkt. 191). King also seeks an evidentiary hearing on this motion. Id. at PageID.858. For the reasons that follow, the Court denies King's motion.

The Government alleges that King was involved in an altercation at a funeral home in Detroit. Resp. at PageID.987 (Dkt. 212). Police were dispatched to the funeral home following reports that there was a group of individuals with large guns. Id. at PageID.988. The fight began after officers were on scene and they witnessed King obtain a micro-Draco pistol from the driver's side of a black Ford Fusion. Id. Officers ordered King to drop the weapon and he eventually did so by putting it back inside the black Ford Fusion. Id. King then took off running. Id. Officers did not pursue King on foot but instead broadcasted his description over their radio. Id.

Shortly thereafter, police spotted King walking down the street and they told him to stop. Id. He said no and got into the passenger seat of Mathis's car. Id. Mathis sped off. Id. Police conducted a traffic stop of Mathis's car and determined that Mathis was driving on a suspended license. Id. Because of his suspended license, Mathis was taken into custody. Id. King was also detained and when he was patted down, police found keys to the black Ford Fusion. Id.

Law enforcement learned that King's car was uninsured so it was eligible to be towed. Id.

Law enforcement conducted an inventory search before towing the car and recovered a micro-Draco pistol from the driver's side floorboard and a second mini-Draco that was contained in a bookbag in the back seat. Id. Law enforcement also found a loaded gun magazine and a live round of ammunition in the vehicle's trunk. Id. King's identification was found in the center console. Id.

King does not contest that officers had reasonable suspicion to stop Mathis's car for a traffic violation. Mot. at PageID.862. However, he argues that the length of the stop, his removal from the vehicle, the search of his person which resulted in officers finding a key fob, his subsequent arrest, and the search of the Ford Fusion were in violation of the Fourth Amendment. Id. at PageID.862–864. The Court disagrees.

At the time Mathis's car was stopped, officers had probable cause to arrest King. Shortly before stopping him, officers saw King with a pistol, disobey their orders, toss the gun inside his car, and flee. Resp. at PageID.988, 990. These actions gave officers probable cause to believe King committed the crimes of carrying a concealed weapon, brandishing a firearm in public, and failure to follow police orders. See Mich. Comp. Laws §§ 750.227, 750.234(e), 750.479a. Additional officers saw King as he entered Mathis's car, and Mathis sped off. Resp. at PageID.990. These events were relayed over the police radio to officers who stopped Mathis's car. Id. at PageID.988. King's arguments ignore everything that officers witnessed shortly before officers stopped Mathis's vehicle.

Nor was the length of the stop unreasonable. After conducting a lawful traffic stop, police officers may investigate the suspected traffic violation for as long as is reasonably necessary to complete that task. Rodriguez v. United States, 575 U.S. 348, 354 (2015). Reasonableness, under the Fourth Amendment, "is measured in objective terms by examining the totality of the

circumstances." Ohio v. Robinette, 519 U.S. 33, 39 (1996). Here, officers had probable cause to arrest King for the actions they had just witnessed. Extending the stop to make the arrest was reasonable. The same conclusion applies to King's argument that removing him from the vehicle and patting him down was in violation of the Fourth Amendment. Officers had probable cause to arrest King, so they could remove him from the vehicle. Further, because he was being arrested, officers were justified in conducting a full search of his person incident to the arrest so the key fob was lawfully found. Chimel v. California, 395 U.S. 752, 762–763 (1969).

The search of King's Ford Fusion was valid under the automobile exception. The automobile exception allows officers to "conduct a warrantless search of a vehicle if they have probable cause to believe that the vehicle contains evidence of a crime." United States v. Smith, 510 F.3d 641, 647 (6th Cir. 2007) (punctuation modified). Here officers knew that the Ford Fusion contained evidence of a crime because officers witnessed King throw a gun into the car. Resp. at PageID.988.

Finally, King has not made the requisite showing for an evidentiary hearing. See Giacalone, 853 F.2d at 483; see also United States v. Lilly, 983 F.2d 300, 310 (1st Cir. 1992) ("the movant must make an adequate threshold showing that material facts are in genuine doubt or dispute."). King's motion states his request for an evidentiary hearing but provides no explanation why. See King Mot. At the hearing on the motion, King's counsel explained that a hearing is required to develop the facts surrounding the sequence of events between the incident at the funeral home and King's arrest because he argues that the vehicle was in private property and thus would not be subjected to a tow (and thus an inventory search). See 2/26/26 Hr'g. Tr. at PageID.1538. Whether the vehicle was on private property is not material as the Court found that the Government had probable cause to search the vehicle under the automobile exception.

King's motion is denied.

## III. CONCLUSION

For the reasons stated above, the motions found at Dkts. 178, 243, 188, 191, 182, and 261 are denied.

**SO ORDERED.**

Dated: October 23, 2026
Detroit, Michigan

s/Mark A. Goldsmith
MARK A. GOLDSMITH
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 23, 2026.

s/Joseph Heacox
JOSEPH HEACOX
Case Manager